DERRICK WATKINS,

        Petitioner,

  v.                                          Case No. 23-cv-1563-pp

CHRIS STEVENS,[1]

        Respondents.

**ORDER DENYING PETITIONER'S MOTION FOR VOLUNTARY DISMISSAL (DKT. NO. 18), GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 15), DENYING CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

On November 20, 2023, the petitioner, representing himself, filed a petition for a writ of *habeas corpus* under 28 U.S.C. §2254 challenging the February 2022 revocation of his extended supervision. Dkt. No. 1. (The petitioner's term of extended supervision resulted from the Washington County Circuit Court's May 2013 decision to revoke the term of probation imposed after his conviction for armed robbery with threat of force in November 2012. State v. Watkins, Case No. 2011CF400 (Washington County Circuit Court)

---

[1] The petitioner named several other individuals and entities as respondents, including the DHA Administrator, an administrative law judge, the Washington County Circuit Court and the Milwaukee County Sheriff's Office. Dkt. No. 1. The only proper respondent in a *habeas* case is the warden of the institution in which the petitioner is confined. See Robledo-Gonzales v. Ashcroft, 342 F.3d 667, 674 (7th Cir. 2003) (citing Chatman–Bey v. Thornburgh, 864 F.2d 804, 811 (D.C. Cir. 1988)). The court update the docket to reflect that Chris Stevens, Warden of Green Bay Correctional Institution, is the proper respondent.

(available at https://wcca.wicourts.gov/).) The respondent filed motion to dismiss the petition. Dkt. No. 15. In an order issued August 16, 2024, the court ordered the petitioner to file his brief in opposition to that motion in time for the court to receive it by September 30, 2024. Dkt. No. 17. On September 5, 2024, the court received from the petitioner his own motion asking the court to voluntarily dismiss his petition without prejudice so that he could return to state court to exhaust his claims. Dkt. No. 18.

The court will deny the petitioner's motion for voluntary dismissal, grant the respondent's motion to dismiss, decline to issue a certificate of appealability and dismiss the case.

**I.     Background**

    A.     State Court Proceedings

On November 14, 2012, the petitioner pled guilty to one count of armed robbery with threat of force. Watkins, Case No. 2011CF400. On December 13, 2012, the state court sentenced the petitioner to serve four years on probation. Id. Five months later, the court revoked the petitioner's probation, and sentenced him to serve five years of initial confinement and five years of extended supervision beginning on June 20, 2013. Id. The petitioner was released to extended supervision on October 23, 2015 due to his successful completion of the Earned Release Program. Id.

The state court subsequently revoked the petitioner's extended supervision; that revocation is the subject of this federal petition. Id. The petition states that the state court held a final revocation hearing in early

2

February 2022 and that the petitioner received a written letter of revocation on February 3, 2022. Dkt. No. 1 at 2–3. The petitioner alleges in the petition that he filed an administrative appeal the next day. Id. at 3. He says that on March 22, 2022, the administrator affirmed the revocation. Id. The petitioner contends that he challenged the administrator's decision on March 22, 2022 by filing a petition for writ of *certiorari*; he calls this filing both an "appeal" and a "petition of WRIT CERTORARI," and says that he sent it to the "clerk of courts Washington County Courthouse, West Bend WI." Id.

On April 25, 2022, the Clerk of Court for Washington County Circuit Court received a letter from the petitioner, contesting payment of fees or fines due to the court and stating that "in the matter of case no 11CF400, there is a petition of WRIT filed with the courts challenging DOC's revocation recommendation that [the petitioner] filed himself in accordance with the policy and procedure to appeal a revocation decision." Watkins, Case No. 2011CF400; Dkt. No. 16-2 at 1–2. Although the petitioner's letter stated that he had filed the *certiorari* petition in his criminal case, the publicly available docket for the Washington County court case does not reflect that that court received or docketed such a petition, either in the petitioner's criminal case or in any other case involving the petitioner. See Watkins, Case No. 2011CF400.[2]

---

[2] The publicly available docket shows that the petitioner has had several other criminal and family law cases in Washington and Milwaukee counties in the years since his 2011 case was filed; none of those case dockets show a *certiorari* or appeal filed in 2022. See State v. Watkins, 2013CF0006 (Washington County); In re the Paternity of A.N.W.C., Case No. 2012PA000053 (Washington County); State v. Watkins, 2013CM000092 (Washington County);

3

The state court record reflects that in the next year or so, the petitioner sent letters to the court inquiring about the status of his alleged petition for a writ of *certiorari*; the docket shows that the court received letters from the petitioner on August 12, 2022; January 9, 2023; and August 17, 2023. Id.; Dkt. Nos. 16-3, 16-7). The letter the court received on August 12, 2022 did not state whether the petitioner had filed *certiorari* petition in his criminal case or had tried to use it to docket a new, separate civil case. The letter the court received January 9, 2023 said,

> I received a letter dated 8·3·22 which indicated that my petition was initiated as part of a criminal case. This is inaccurate. My petition was initiated in attempts to challenge the revocation of my extended supervision, judicial bias by ALJ, and a violation of time requirements in accordance with HA § 2.05. To this day there has been no acknowledgment of my petition filed and sent on 3·22·21 challenging my revocation. At this time I respectfully request a docket sheet of my filings to the court as well as a updated status on my petition.

Dkt. No. 16-3 at 2.

On April 7, 2023, the Wisconsin Court of Appeals received from the petitioner a petition for a writ of *mandamus*. Watkins, Case No. 2011CF400; Dkt. No. 16-5. The petition asked the appellate court to reverse the revocation of the petitioner's supervised release. Id. at 1. Though it detailed the reasons the petitioner believed his revocation was improper, this petition made no

---

State v. Adrienne Coo, *et al.*, Case No. 2021FA000796 (Milwaukee County); State v. Watkins, 2021CF02537 (Milwaukee County) (all available at https://wcca.wicourts.gov/). There is no *certiorari* petition or appeal on the docket in any of those cases, and the petitioner did not file a new, separate civil case via any petition.

4

reference to the *certiorari* petition he claimed to have filed with the Washington County Circuit Court a year earlier.

The appellate court denied the *mandamus* petition. Watkins, Case No. 2011CF400; Dkt. No. 16-6. Among other things, the appellate court told the petitioner that "any decision revoking extended supervision is reviewable in the circuit court under certiorari review." Id. at 2. The appeals court concluded that the petitioner had a remedy at law for any errors that had occurred at the revocation hearing—he could have sought *certiorari* review in the Washington County Circuit Court. Id.

On August 17, 2023, the Washington County Circuit Court judge received a third letter from the petitioner, asking to be allowed to file "another write of certiorari" challenging his revocation. Dkt. No. 16-7. The petitioner asserted that he had filed a *certiorari* petition on March 22, 2022, that he had proof of the day he'd sent it but he'd not received an acknowledgment or response from the court. Id. at 1. He asked to for "the original writ to be located, or that [he] be allowed to refile." Id. He attached a mail log list from the Washington County sheriff's office showing that on March 23, 2022, he'd mailed something to the Washington County Circuit Court clerk's office. Id. at 2.

The petitioner filed this federal *habeas* petition three months later, on November 20, 2023.

On April 10, 2024 (about five months after the petitioner filed his federal *habeas* petition), the state circuit court received from the petitioner a "motion

5

to reinstate writ of certiorari appeal." Watkins, Case No. 2011CF400; Dkt. No. 16-9. In it, the petitioner advised the court that he'd filed a "writ of certiorari on 3-23-22 and addressed it to the clerk of courts, Washington County." Id. at 1. He stated that since filing the writ, he had "not gotten an acknowledgment from the courts regarding the writ, which was timely filed with 45 days." Id. at 2. Again, he attached the sheriff's department mail log, showing that he'd mailed something to the clerk's office on March 23, 2022. Id. at 4.

On April 16, 2024, the Washington County judge issued an order denying the petitioner's motion to "reinstate." Dkt. No. 16-10. The court stated that the petitioner had filed the motion "based on the mistaken belief that a Writ of Certiorari to appeal the decision of an Administrative Law Judge can be filed in his criminal case." Id. The court explained that the petitioner was wrong, stating, "A Write of Certiorari cannot be filed in an underlying criminal case. It must be filed as a separate, different lawsuit, and must be filed within 45 days of the revocation decision, per section 893.735(2), Wis. Stats." Id. The court concluded that it had no authority to deny the petitioner's motion and summarily denied it. Id.

B.    Federal Court Proceedings

On November 20, 2023, the petitioner filed the instant *habeas* petition, raising five grounds for relief. Dkt. No. 1.[3] First, he argues that the State of

---

[3] The petition violates this court's Civil Local Rule 9(a)(1), which requires that "[a]ll persons applying or petitioning for release from custody under 28 U.S.C. . . . § 2254 . . . must file their application, petition, or motion with the Clerk of Court using forms available from the Court." The petitioner did not use this court's official form to prepare his petition. But the court now has screened the

6

Wisconsin Division of Hearings and Appeals "violated its own time provisions and requirements" and improperly scheduled the final revocation hearing more than fifty days after the decision to revoke was made. Id. at 6. Second, the petitioner argues that "Attorney Rupich" provided ineffective assistance, violating his Sixth and Fourteenth Amendment rights. Id. Third, the petitioner argues that his "substantive rights were violated" when the ALJ held the petitioner accountable for his lawyer's alleged ineffective assistance, then tried to "forc[e]" the petitioner to proceed "with the ineffective assistance, and developed a personal dislike towards the accused and acted on it." Id. Fourth, the petitioner asserts that on his first appeal, the DHA Administrator "violated the 21 day calendar written decision, and the time requirement extension of 45 days total for a written decision, or letter of extension which neither was done as required under Administrative Code HA. 2.05;" the petitioner asserts that he appealed the ALJ's revocation decision on February 4, 2022 "and no response was given until 3-22-22." Id. at 7. Finally, the petitioner alleges that although the reason he was being revoked was for "the assault that was dismissed at trial," the ALJ considered the homicide, which increased his exposure. Id. According to the petitioner, "[w]hen revocation was sought, a recommendation of 4 yrs 1 mo 23 days was asked for the alleged assault" but "[t]he homicide bumped the recommendation up to 6yrs 1 mo 23 days" even though "the revocation order was only for the assault." Id.

---

petition and the respondent has filed a motion to dismiss, so the court will take no action on the rule violation.

For relief, the petitioner asked for a new revocation hearing where he could present evidence of his innocence; in addition (or in the alternative), he asked the court to "adjust revocation time back to 4 yrs 1 mo 23 days for the allegation in which [the petitioner] was unlawfully revoked."[4] Id.

The court screened the petition under Rule 4 of the Rules Governing Section 2254 Cases and observed that the petitioner did not appear to have exhausted his state court remedies. Dkt. No. 10 at 8. Nonetheless, the court allowed the petition to proceed, explaining that exhaustion is an affirmative defense that the respondent must prove. Id. at 10.

On August 14, 2024, the respondent filed a motion to dismiss the petition, arguing that Grounds One, Four and Five allege only state law errors, which are not cognizable on federal *habeas* review, and that all the petitioner's claims were procedurally defaulted due to his failure to exhaust his state-court remedies. Dkt. No. 16 at 5–11. Instead of filing a response to that motion, on September 5, 2024 the petitioner filed his own motion, asking the court to allow him to voluntarily dismiss the petition so that he could return to state court to exhaust his claims. Dkt. No. 18. The respondent did not respond to this motion or file a reply brief in support of his own motion to dismiss.

## II. Petitioner's Motion to Dismiss (Dkt. No. 18)

The petitioner states in his motion to dismiss that he "recently learned of a state remedy that [he's] not exhausted and [he] would like to exhaust all state

---

[4] It is not clear that this federal court has the power to grant the relief the petitioner seeks, but because the court is dismissing the petition, it will not analyze that issue.

8

remedies before the superior courts are involved." Dkt. No. 18. The petitioner did not use the word "stay;" he mentions only dismissal. But he seeks a form of dismissal that would allow him to return to state court, exhaust any unexhausted claims, then come back to federal court to seek federal *habeas* relief; that is, in essence, a request for the court to stay the federal proceedings.

"Stay and abeyance should be available only in limited circumstances." Rhines v. Weber, 544 U.S. 269, 277 (2005)). A district court should grant a stay only when "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278. The petitioner has not shown good cause for his failure to exhaust his claims.

In his petition, the petitioner alleged that on March 22, 2022, he filed a petition for writ of *certiorari* in the Washington County Circuit Court, appealing the decision to affirm revocation of his extended supervision.[5] Dkt. No. 1 at 3. But he says that, "as of 11-14-23"—nearly twenty months after he purportedly filed the petition, and a week or so before this federal court received his petition—"there has been no acknowledgment or response to the writ." Id. at 7. The state court documents submitted by the respondent show that the petitioner sent letters inquiring about the status of his petition for *certiorari* in

---

[5] "Venue of an action for certiorari to review a[n] . . . extended supervision . . . revocation . . . shall be in the county in which the relator was last convicted of an offense for which the relator was on . . . extended supervision . . . ." Wis. Stat. §801.50(5).

9

the summer of 2022 and winter 2023. See Dkt. No. 16-3 Both times, the Washington County Circuit Court informed the petitioner that he must file a petition for a writ of *certiorari* in a separate civil lawsuit, not in his criminal case; the first letter was dated on August 23, 2022, the second on January 30, 2023. Dkt. No. 16-4.

In August 2023, the state court judge received from the petitioner a letter (dated eight months *after* the court's second letter informing the petitioner that he needed to file a separate civil proceeding), asking for permission to file another petition for a writ of *certiorari* challenging the revocation proceedings, asserting that he had filed a petition on March 22, 2022 but received no response and asking that the court either locate the missing March 2022 petition or allow him to refile. He attached the mail log list from the sheriff's department showing that he had mailed something to the clerk's office from the jail on March 23, 2022. In its September 2023 response letter, the court told the petitioner that it couldn't find any documentation relating to a petition for a writ and reminding the petitioner that such a petition had to be filed within forty-five days and had to be filed as a separate, civil lawsuit. But the petitioner persisted, and filed a "motion to reinstate" months *after* he'd filed this federal *habeas* petition. He again told the state court that he'd filed a petition in March 2022 but had received no response, and again attached the jail log showing that he had mailed something from the jail to the clerk of court on March 23, 2022. As discussed, the state court denied the motion.

The petitioner appears to have sent *something* from the jail to the Washington County Clerk of Courts on March 23, 2022. The court has no way of knowing what the petitioner sent. It has no way of knowing whether he put the case number for his criminal case on whatever he sent, or whether he sent a request to open a new, civil case (as required). It has no way of knowing whether he sent something entirely unrelated to the revocation of his extended supervision. The petitioner has not provided this court (or, it appears, the state court) with a copy of whatever it was he sent on March 23, 2022. There is no evidence in the criminal case record, or on Wisconsin's publicly available site (https:/wcca.wicourts.gov) that, within forty-five days of his February 2022 revocation, the petitioner filed a new, civil lawsuit in the Washington County Circuit Court via a petition for a writ of *certiorari*, or that he asked for an extension of that time prior to its expiration.

The petitioner states in his motion that he "recently learned of a state remedy" he has not yet exhausted. He has not explained what that remedy is, and it is not clear what remedy he could pursue that would allow him to challenge the revocation well over two years after it occurred. To challenge a revocation decision, the petitioner must appeal the decision to the DHA Administrator within ten days of the decision and then seek review by the circuit court via a petition for a writ of *certiorari* within forty-five days. Wis. Stat. §§302.113(9)(g), 893.735(2); Wis. Admin. Code HA §2.05(8); see State *ex rel.* Reddin v. Galster, 215 Wis. 2d 179 (Wis. Ct. App. 1997). Although the petitioner complied with the first requirement—he appealed the revocation

11

decision to the DHA Administrator—there is no evidence that he timely complied with the second. The Supreme Court of Wisconsin has acknowledged that there are times when a court may "toll"—or pause—the forty-five-day time limit mandated by Wis. Stat. §893.735, for example, when an incarcerated person gives the petition to prison staff well in advance of the forty-five-day deadline but the petition does not arrive at the clerk's office for an inordinately long period, or when there is delay in an incarcerated person obtaining his trust account records, or when the DOC delays in providing necessary documents. State *ex rel.* Griffin v. Smith, 270 Wis.2d 235, 253-54 (Wis. 2004) (citations omitted). As the Supreme Court explained, in these cases "the failure to timely file . . . was beyond the prisoner's control." Id. at 254. But the petitioner has not asked the state court or this court for equitable tolling. He has not provided evidence that whatever he mailed on March 23, 2022 was a *certiorari* petition seeking to open a new, civil case attacking the revocation of his extended supervision. He has not filed an affidavit or verified declaration attesting to those facts. He has only stated that he mailed a *certiorari* petition on March 23, 2022 and that he's never received acknowledgment that it was received.

To the extent the petitioner wants to return to state court and continue trying to file a petition for a writ of *certiorari*, it is not clear to the court what argument he could present that would allow him to do so under these circumstances. The state court has advised him—more than once—that that court has no record of a petition for *certiorari*. It has advised him—more than

once—that he needed to file a new, civil lawsuit within forty-five days of the revocation, which he did not do. The petitioner has not shown good cause for his failure to complete litigation of his claims in state court, and he has not demonstrated that if the court stays these federal proceedings, he is likely to be able to do so. The court will deny the petitioner's motion for dismissal and address the respondent's motion to dismiss.

### III. Respondent's Motion to Dismiss (Dkt. No. 15)

#### A. Standard

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Miller v. Smith, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. §§2254(d)(1), (2)). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 102 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The

13

standard under § 2254(d) is 'difficult to meet' and 'highly deferential.'" Saxon v. Lashbrook, 873 F.3d 982, 987 (7th Cir. 2017) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)).

B.    Cognizability

The respondent first argues that Grounds One, Four and Five of the petition assert violations of Wisconsin state law and are not cognizable on federal *habeas* review. Dkt. No. 16 at 6. The respondent argues that Grounds One and Four allege that the DHA "violated deadlines imposed by the Wisconsin Administrative Code" and that Ground Five does not clearly describe how any constitutional rights were implicated by the ALJ's calculation of the duration of the petitioner's revocation. Id. at 6–7.

Grounds One, Four and Five of the petition are not cognizable on federal *habeas* review. "[E]rrors of state law in and of themselves are not cognizable on habeas review." Perruquet v. Briley, 390 F.3d 505, 511 (7th Cir. 2004); Shaw v. Wilson, 721 F.3d 908 (7th Cir. 2013) (federal courts can't review a state court's resolution of state-law questions). The issue of whether the DHA followed state administrative rules and regulations regarding the timing of the petitioner's revocation hearing and the issuance of a written decision regarding his appeal are state law questions. Those claims of error are not cognizable on *habeas* review absent some articulation that the DHA's error implicated a constitutional right. The petitioner has not made such a showing.

Nor can this federal court review the petitioner's claim that the ALJ increased the duration of his revocation based on some improper factor. Errors

14

by a state court in applying state sentencing laws are not cognizable on federal *habeas* review. Dellinger v. Bowen, 301 F.3d 758, 764 (7th Cir. 2002); see also Bradley v. Lockett, 549 F. App'x 545, 549 (7th Cir. 2013) (noting that sentencing errors are not generally cognizable on collateral review). The ALJ's decision to consider certain factors when setting the duration of the petitioner's revocation is a state-law matter that this court cannot review. The court will grant the respondent's motion to dismiss Grounds One, Four and Five because the claims in those grounds are not cognizable on *habeas* review.

    C.    Procedural Default

The respondent argues that the petitioner failed to present any of his grounds for relief to the state courts and that he no longer can do so, making his claims procedurally defaulted. Dkt. No. 16 at 7. He states that the petitioner needed to challenge the revocation proceedings by filing an administrative appeal with the DHA Administrator, then bringing a petition for writ of *certiorari* in the circuit court within forty-five days of the decision. Id. at 8–9 (citing Wis. Stat. §§302.113(9)(g), 893.735(2); Wis. Admin. Code HA §2.05(8)). The respondent argues that there is nothing in the state court record indicating that the petitioner ever properly filed a petition for writ of *certiorari*. Id. at 9. The respondent contends that even if the petitioner had timely filed such a petition, the petitioner never exhausted that purported petition by proceeding through the appellate review process. Id. at 9–10. According to the respondent, the petitioner did not appeal any of the circuit court's actions, such as the circuit court's denial of his motion to "reinstate" the purported

15

petition. Id. at 10. Because the time for the petitioner to challenge his revocation proceedings has now passed, the respondent argues that the petitioner's claims are procedurally defaulted and must be dismissed. Id. at 10–11.

A state petitioner must exhaust available state-court remedies before a district court will consider the merits of a constitutional claim in a federal *habeas* petition. 28 U.S.C. §2254(b)(1)(A). To exhaust his claims, "[a] petitioner must raise his constitutional claims in state court 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'" Weddington v. Zatecky, 721 F.3d 456, 465 (7th Cir. 2013) (quoting Villanueva v. Anglin, 719 F.3d 769, 775 (7th Cir. 2013)). "The failure to present fairly each habeas claim in state court 'leads to a default of the claim[s] and bar[s] the federal court from reviewing the claim[s'] merits.'" Weddington, 721 F.3d at 456 (quoting Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010)). The courts call this circumstance "procedural default."

If an incarcerated person files a federal petition without exhausting his state court remedies, the federal court may dismiss it without prejudice so that the prisoner can return to state court to exhaust remaining remedies. Bolton v. Akpore, 730 F.3d 685, 696 (7th Cir. 2013). If, however, the incarcerated person did not fairly present his claim and it is now too late to return to state court to do so, "it is not the exhaustion doctrine that stands in the path to habeas relief . . . but rather the separate but related doctrine of procedural default." Id.; see also Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004); Perruquet v. Briley,

16

390 F.3d 505, 514 (7th Cir. 2004); Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

The court has explained that the petitioner did not exhaust his remedies in state court, and it is too late for him to do so. Despite the petitioner's insistence, there is no evidence in the record that he ever filed a petition for writ of *certiorari* in the state circuit court—only that he mailed something from the jail to the Washington County Clerk of Court on March 23, 2022. The court was unable to locate any writ filed by the petitioner in his criminal case, 2011CF400 (which would, in any event, have been improper) or any separate state court case. Because the petitioner did not file a petition for writ of *certiorari* within the specified time frame, he did not fairly present his claims to the Wisconsin state courts and it is now too late to do so. He has procedurally defaulted his claims.

The court must consider whether to excuse the petitioner's default. Coleman v. Thompson, 501 U.S. 722, 750 (1991). For the court to excuse the default, the petitioner must have shown either (1) cause for the default and resulting prejudice, or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice. Id. (citations omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). As the court had explained, the petitioner has not shown this court why it should excuse his default. There is no evidence in the

17

record showing that there was some external factor that prevented him from timely and properly filing a petition for writ of *certiorari* to challenge his revocation proceedings. Nor has the petitioner presented any evidence that a miscarriage of justice will result from this court declining to consider the petitioner's claims. Because the petitioner has not demonstrated cause and prejudice, the court will not excuse his default. The court will dismiss Grounds Two and Three as procedurally defaulted.

The court will grant the respondent's motion to dismiss.

### IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because reasonable jurists could not debate that the petitioner is not entitled to *habeas* relief under 28 U.S.C. §2254.

### V. Conclusion

The court **DIRECTS** the clerk to update the docket to reflect that Warden Chris Stevens is the only respondent and terminate the remaining respondents.

18

The court **DENIES** the petitioner's motion for voluntary dismissal. Dkt. No. 18.

The court **GRANTS** the respondent's motion to dismiss. Dkt. No. 15.

The court **DECLINES** to issue a certificate of appealability.

The court **ORDERS** that this case **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 27th day of December, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**